Daniel P. **WILLIAMS**, Plaintiff-Appellant,

v.

**METROPOLITAN LIFE INSURANCE COMPANY**, a corporation, Defendant-Respondent.

No. 33461.

St. Louis Court of Appeals.

Missouri.

Nov. 18, 1969.

Bartlett, Stix & Baldwin, William Stix, St. Louis, for plaintiff-appellant.

Fordyce, Mayne, Hartman, Renard & Stribling, P. Terence Crebs, St. Louis, for defendant-respondent.

WEIER, Commissioner.

This is a suit on a contract of group life insurance issued by the defendant, Metropolitan Life Insurance Co., to General Motors Corporation to cover the lives of its employees at its Chevrolet assembly plant in St. Louis. The plaintiff was the father of Daniel P. Williams, Jr. who entered the employ of General Motors on March 9, 1964. Daniel P. Williams, Jr. was an hourly rated employee working a shift from 7:00 a. m. to 3 p. m. o'clock. As such, he was entitled to request insurance under the group plan. This request was filed by him with his employer on or before March 11, 1964. At the same time he authorized a deduction from his pay for the premium charged.

On March 18, 1964, Daniel P. Williams, Jr. sustained an injury to his right ankle arising out of and in the course of his employment requiring medical care and treatment. He was referred by his employer to Dr. Earl P. Holt, who saw him on several occasions up through April 17, 1964, and on that date another appointment was given him by Dr. Holt for May 1, 1964, at 1:30 p. m. o'clock. As will be more clearly understood later, May 1, 1964, was a crucial day in this litigation, since it was the date upon which the group insurance policy would become effective as to Daniel P. Williams, Jr.

Although Williams, Jr. had sustained the injury to his ankle and was under the care of the company physician, he missed only a day or so of work and worked at the assembly plant regularly after his injury. It was a practice of General Motors to provide transportation to the doctor's office outside of the plant in a situation where an injury compensable under the Workmen's Compensation Law was being treated and the patient was ambulatory. When such arrangements were made, the employee was not docked for the time he was away from the plant, provided he had reported for work that day. Williams, Jr. had availed himself of this practice on one or more occasions prior to May 1, 1964.

On April 30, 1964, he was informed at the assembly plant that he would be laid off effective at the end of his regular shift, at 3:00 p. m. o'clock on May 1, 1964.

Although he could have reported in to work on May 1, 1964, Daniel P. Williams,

Jr. did not so elect. However, he did keep his appointment with Dr. Holt and received medical care and treatment for the injury he had sustained on March 18, 1964. The last day that he ever worked at the assembly plant was April 30, 1964. Thereafter, on May 9, 1964, he died as the result of an automobile accident which was unrelated to his employment. No certificate of insurance had been issued to him under the group policy.

On July 10, 1964, plaintiff supplied General Motors with written proof of death and made claim to the proceeds payable under the group insurance plan. This claim was promptly denied by the defendant on the basis that the insurance had never become effective on the life of Daniel P. Williams, Jr. because on the day of his eligibility, that is, May 1, 1964, he was not "actively at work". This requirement was contained in a provision of the policy, which read in part, as follows:

"SECTION 3. EFFECTIVE DATE OF INSURANCE.—An Employee may become insured hereunder only by making written request to the Employer on forms furnished by the Insurance Company. The Insurance on any Employee who makes such request on or before the date of his eligibility shall become effective on the date of his eligibility, provided he is actively at work on the date of his eligibility."

Based upon the above facts agreed to by the parties, the case was submitted to the trial court without a jury. The only issue submitted below arose out of the meaning of the phrase, "actively at work". Was Daniel P. Williams, Jr. actively at work on the effective date of the insurance contract, namely, May 1, 1964? This issue was decided against plaintiff and still remains the sole issue on appeal.

Plaintiff contends that the decedent was "actively at work" on May 1, 1964, because he kept his appointment with Dr. Holt. He argues that since the decedent was being treated for an injury arising out of and in the course of decedent's employment by a physician employed by General Motors, his visit to the doctor was an engagement in an activity in the course and scope of his employment. Being so engaged, plaintiff urges that we can then say, by a reasonable interpretation, that decedent Williams was "actively at work" on the date of eligibility.

The defendant admits that if an ambiguity existed in the policy then the ambiguity must be resolved against the defendant. But defendant contends that "actively at work" has a plain meaning of engaging in the usual and normal activities of his employment and is not susceptible of being equated with "arising out of or in the course of his employment" as urged by plaintiff. Hence defendant says that decedent was not "actively at work" on his date of eligibility under the provision of the insurance policy and the judgment of the trial court must be affirmed.

Insurance policies are contracts and in construing them, plain and unambiguous language must be given its plain meaning. (Giokaris v. Kincaid, Mo., 331 S.W.2d 633, 636, 86 A.L.R.2d 925; Barrett Plaza, Inc. v. Northwestern Mutual Insurance Co., Mo.App., 411 S.W.2d 265, 267.) It is only when the contract is ambiguous and susceptible of more than one interpretation that the rule of liberal construction can be invoked, and then ambiguities will be construed in favor of the insured. (Swaringin v. Allstate Insurance Co., Mo.App., 399 S.W.2d 131, 133.) Where the language employed is clear, there is no occasion for construction, and it then becomes the function of the court to give force and effect to the contract as it is written. (Wichman v. Aetna Casualty and Surety Co., Mo.App., 412 S.W.2d 528, 532; McGarrah v. Stockton, Mo.App., 425 S.W.2d 223, 228.) It is not the function of the court to re-write the contract (Gage v. Connecticut General Life Insurance Co., Mo.App., 273 S.W. 2d 761, 763, 47 A.L.R.2d 1234); nor "to change its meaning by a perversion of

language or by conjuring up an ambiguity" (Kisling v. MFA Mutual Insurance Co., Mo.App., 399 S.W.2d 245, 248).

It would seem that the phrase "actively at work" should be clearly understood as to its meaning. The adjective "active" is described in Webster's 3rd New International Dictionary: "characterized by action rather than by contemplation or speculation; productive of action or movement; * * * engaged in activity * * * full-time service." The adverb would carry the same connotation. In the same work, the phrase "___ at work" is equated with "engaged in working (as at one's occupation)". It would seem that the words are so basic that in describing their meaning the lexicographer had to use forms of the same words to describe their meaning.

▮ Considering the phrase in its form, where used, in the light of its "plain meaning" and under the facts of this case, we are constrained to hold in the words of the able trial judge that the phrase "actively at work" means in simple terms "that an employee is present at his usual place of employment performing his usual and ordinary functions and duties or otherwise working at his employment under the supervision and direction of his superiors."

No cases in this jurisdiction have been cited by counsel, nor have we found any, that can be said to be direct authority. The Kansas City Court of Appeals, however, had before it a case which touched upon the problem and in turn discussed cases from other jurisdictions which are very persuasive in our decision of the issue before us. This case of Marshall v. Connecticut General Life Insurance Company, Mo.App., 371 S.W.2d 363, involved the interpretation of a group insurance policy which provided an increase in benefits upon the employee receiving an increase of pay which placed him in a higher classification. Marshall became entitled to certain benefits by reason of disability on September 12,

1960. His union negotiated a new contract with his employer after his disablement which increased pay and was retroactive to a time worked after October 1, 1957 and before his disablement. If this pay had been added to his basic monthly salary, he would have been in a higher classification and entitled to an increase in benefits over those received. The group policy, however, provided that any increase in benefits due to a change in basic monthly pay would be effective on the date of change. Also, any increase in benefits on an employee not in active service on his day of eligibility would not be effective until he returned to active service. The court held that the phrase "active service" had a plain meaning which could be clearly understood. It was the function of the court to give application of this meaning to the contract. The claim was denied.

Cited with approval in Marshall was an opinion of the Supreme Court of California in Boyer v. Travelers Ins. Co., 7 Cal.2d 615, 61 P.2d 925. Boyer was an automobile salesman on commission. His beneficiary would have been eligible for payment under a group life insurance policy if it could be established that Boyer was not in violation of a condition of the policy on his day of eligibility. On that day he was in the hospital and conferred with his superiors on whether other employees should be permitted to carry on his duties or whether certain deals should remain for his return. The condition of the policy required that he be "actually at work" on that day. The court said such words were in common usage, and their meaning seemed quite clear and unambiguous. Even if application of a rule of liberal construction could be had, such a rule would have to be stretched beyond all reason to show that the employee was "actually at work". Boyer had performed none of his customary duties on that day in the hospital. He merely discussed his inability to perform his duties and the advisability of permitting others to carry them out.

Another case relied on was Elsey v. Prudential Insurance Company of America (10th Cir., Okl.), 262 F.2d 432. Here a bank employee would have been eligible if she had been "actively at work on full time" on Saturday, October 26, 1957. This was a bank holiday. She had worked last on October 24, 1957. On October 25, she did not appear at the bank for personal reasons. On October 26, she became ill and died on October 29 without ever returning to her job. The court held that her beneficiary was not entitled to payment of the insurance because there was a failure to comply with the condition precedent that she be "actively at work on full time". This had a simple meaning requiring her to actually be on the job and performing her customary work.

In Colantonio v. Equitable Life Assur. Soc. of the United States, Ohio Com.Pl., 100 N.E.2d 716, the contention was made by defendant that the deceased employee was not "actively at work" on his date of eligibility. The court had no difficulty in finding he was not "actively at work" on that date since he was ill and did not appear at his place of employment on that date, but it allowed recovery because he became eligible under the terms of the policy by appearing a few days later and performing some of his usual and customary tasks for several hours.

The fourth case relied on was White v. Great American Reserve Insurance Company, Tex.Civ.App., 342 S.W.2d 793. Here decedent, an employee of the city of Dallas, left work ill on May 8, 1957 and never worked for the city again before his death on June 2, 1957. The condition in the policy required that he be "actually at work" on the effective date May 12, 1957. The court held he was not actually at work.

Another case which is pertinent but not referred to in Marshall is Augusta v. John Hancock Mutual Life Insurance Company, 11 Misc.2d 111, 170 N.Y.S.2d 908. Augusta was traffic manager, sales manager and contract administrator. While in the hospital the officials of his employer visited him almost every day to discuss business problems. He was paid his full salary. The court found him to be "actively at work" but made the observation that it arrived at this construction by reason of the employee being in a supervisory and advisory capacity so he could remain actively at work. A situation involving a wage earner whose duties required manual labor and who could not perform them would compel the court to arrive at a different construction.

This same result was reached in Equitable Life Assur. Society of United States v. Worthman, (7th Cir. Wis.) 67 F.2d 721, where a supervisory employee remained at home on full pay and rendered supervisory and consultative service. The condition of the policy required him to be "working full time and for full pay" on date of eligibility or some day thereafter. Again the court remarked that had decedent been a daily wage worker with regular duties to perform at particular times and places the question might have been more easily solved.

A contrary result was reached in Rabinowitz v. Travelers Insurance Co., 11 Wis. 2d 345, 105 N.W.2d 807. Here the employee was president, general manager and controlling stockholder of the employing company. The effective date of the insurance was March 1, 1958. Rabinowitz went to the hospital February 21, 1958 and remained until he died April 1, 1958. The insurance provision required that he be "actively at work performing all of the duties of his employment with the employer member at his customary place of employment". Holding against the beneficiary, the court said: "It is a common expression to say a person 'went to work,' or he 'was at work'. Such expressions connote place as well as activity." L.C. 811.

The cases relied on by plaintiff to sustain his contention that Daniel P. Williams, Jr. was "actively at work" when he kept his appointment with Dr. Holt on May

1, 1964, are those involving an extension of the protection of workmen's compensation laws to employees who are injured while going to or from a doctor's office at the request or direction of the employer for treatment of a compensable injury. The weight of authority holds that such journeys, made under authority of the employer, are necessary for treatment of the original injury and hence if the employee is injured going to or from the doctor's office it occurs in the course of and arises out of the person's employment.[1] These cases are readily distinguished from the case at bar. Our statute, Sec. 287.800, RSMo 1959, V.A.M.S., provides that all of the provisions of the Workmen's Compensation Law shall be liberally construed. Under this directive the act must be liberally construed by the courts and all doubts resolved in favor of the employee. (Enyard v. Consolidated Underwriters, Mo.App., 390 S.W.2d 417, 423). But in the case before us, the claim is based upon an insurance contract where liberal interpretation may not be indulged in by the court unless the terms of the policy are ambiguous. Ambiguity not being present, we cannot search for a meaning beyond the plain language of the contract. To do otherwise, would be to pervert the language and do violence to the terms of a valid contract.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.

---

1. Pedersen v. Maple Island, Inc., 256 Minn. 21, 97 N.W.2d 285, injured on journey from doctor's office to home; Fitzgibbons v. Clarke, 205 Minn. 235, 285 N.W. 528, fell on return to employment from doctor's office; Goldberg v. 954 Marcy Corporation, 276 N.Y. 313, 12 N.E.2d 311, fell on way to doctor; Huhn v. Gehnrich Co., 250 N.Y. 568, 166 N.E. 327, injured on return to work from doctor's office; Tay-

lor v. Centex Construction Company, 191 Kan. 130, 379 P.2d 217, injured on return to work from doctor's office; Immer & Company v. Brosnahan, 207 Va. 720, 152 S.E.2d 254, injured on way to doctor's office. Cf. Snowbarger v. M.F.A. Central Co-operative, Mo., 349 S.W.2d 224, affirming Mo.App., 328 S.W.2d 50, claim denied where employee was injured on way to see his own doctor.